## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

_____
                                        :
SECURITIES AND EXCHANGE COMMISSION,     :
                                        :
                    Plaintiff,          :
                                        :          Civil Action No.
          v.                            :
                                        :
DEWALT J. WILLARD, JR.,                 :
WILLIAM F. WILLARD, SR., and            :
LARRY L. MARTIN,                        :
                                        :
                    Defendants.         :
_____:

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges for its Complaint the following:

## PRELIMINARY STATEMENT

1.     This case involves unlawful insider trading in the securities of Ag-Chem Equipment Company, Inc. ("Ag-Chem") by three individuals, DeWalt J. Willard, Jr. ("DeWalt Willard"), William F. Willard, Sr. ("William Willard"), and Larry L. Martin ("Martin"), while each was in possession of material non-public information concerning merger negotiations in which Ag-Chem was involved, which culminated in a November 20, 2000 announcement of Ag-Chem's acquisition by AGCO Corporation ("AGCO").

2.     DeWalt Willard, a member of Ag-Chem's board of directors, knew that Ag-Chem was involved in merger negotiations since at least August 17, 2000.  Between that date and

October 6, 2000, DeWalt Willard directly, and through the securities account of a longtime friend, purchased shares of Ag-Chem stock, thereby earning illegal profits of $73,287.  DeWalt Willard failed to file the required Form 4 with the Commission disclosing any of his purchases made through his friend's account.

3.      DeWalt Willard also tipped his son, William Willard, about the merger negotiations.  William Willard tipped Martin, his friend and business associate, and asked Martin to purchase Ag-Chem stock on his behalf.  While in possession of material nonpublic information, Martin purchased Ag-Chem stock for William Willard's benefit, which resulted in illegal profits of $33,462 for William Willard.

4.      While in possession of material nonpublic information, Martin purchased Ag-Chem stock in his personal brokerage account and purchased Ag-Chem stock for his two sons. As a result of Martin's trading in his own and his sons' accounts, Martin earned illegal profits of $109,387.

5.      As a result of the conduct described in this Complaint, DeWalt Willard, William Willard and Martin have violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") , 15 U.S.C. § 78j(b), and Rule 10b-5, thereunder, 17 C.F.R.§ 240.10b-5.

6.      In addition, as a result of the conduct described in this Complaint, DeWalt Willard has violated and, unless restrained and enjoined, will continue to violate Section 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3, 17 C.F.R. § 240.16a-3, thereunder.

## JURISDICTION AND VENUE

7.     The Commission brings this action pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. 78u(d), for the following relief: (i) permanent injunctive relief against the defendants; and (ii) disgorgement of illegal Ag-Chem trading profits, plus prejudgment interest thereon, from the defendants.  The Commission also seeks civil penalties against the defendants pursuant to Section 21A of the Exchange Act, 15 U.S.C. 78u-1.  In addition, the Commission seeks an order barring DeWalt Willard from serving as an officer or director of any public company pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. 78u(d)(2).

8.     This Court has jurisdiction over this action pursuant to Sections 21(d), 21A and 27 of the Exchange Act, 15 U.S.C. 78u (d), 78u-1 and 78aa.

9.     Certain of the acts and practices constituting the violations alleged herein occurred within the District of Maryland and elsewhere, and were effected, directly and indirectly, by making use of the means and instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange.

## DEFENDANTS

10.     **DeWalt J. Willard, Jr.**, age 71, resides in Frederick, Maryland.  He is the founder and former Chief Executive Officer of Willard Agri-Service ("Willard Agri-Service"), based in Frederick, Maryland.  DeWalt Willard served as a Director and member of the Audit Committee for Ag-Chem from 1998 to 2001.

11.      **William F. Willard, Sr.**, 47, resides in Poolesville, Maryland.  He is the son of DeWalt Willard and longtime friend and business associate of Martin.  William Willard is employed by Willard Agri-Service, serves as President of at least one of the Willard Agri-Service companies, and sits on the board of directors for each of the four Willard Agri-Service companies.

12.      **Larry L. Martin**, 49, resides in Williamsport, Maryland.  He is employed by Willard Agri-Service, serves as President of one of the Willard Agri-Service companies, and is a member of its board of directors.

## FACTS

13.      Ag-Chem Equipment Company, Inc. was a Minnesota corporation, headquartered in Minnetonka, Minnesota.  Ag-Chem was a manufacturer of specialized off-road heavy equipment for agriculture and industrial applications including machinery designed for the application of fertilizer and chemicals to farm fields.  Prior to its acquisition by AGCO, which became effective April 16, 2001, Ag-Chem's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act and traded on the NASDAQ.

14.      Over the years, Ag-Chem executives had numerous informal conversations with representatives of an agricultural equipment company concerning a possible joint venture or business combination.

15.      In March 2000, Ag-Chem hired a Financial Adviser to provide advice in connection with the discussions with the agricultural equipment company.  In addition, the

4

Financial Adviser was retained to analyze various financial alternatives, including other possible business combinations.

16.     In April 2000, another investment banking firm contacted Ag-Chem's Financial Adviser on behalf of another potential suitor, AGCO, to express AGCO's interest in a possible acquisition of Ag-Chem.  In late May 2000, Ag-Chem and AGCO representatives met to take a tour of one of Ag-Chem's factories, exchange general company overviews and explore the possibility of a business combination.  By late July 2000, AGCO signed a confidentiality agreement with Ag-Chem.

17.     On August 16, 2000, at the request of Ag-Chem's CEO, Ag-Chem's Financial Adviser sent, via Federal Express, valuation materials to each of Ag-Chem's outside directors, including DeWalt Willard.  The cover letter was explicitly labeled "Personal and Confidential." The materials contained the Financial Adviser's preliminary judgments on Ag-Chem's proposed value and Ag-Chem's potential suitors, including the original potential merger partner and AGCO, as well as Ag-Chem's CEO's views as to the terms and price of a potential transaction.

18.     On August 21, 2000, the Financial Adviser made a presentation at Ag-Chem's board of directors' meeting held at Ag-Chem's headquarters in Minnetonka, Minnesota.  All of Ag-Chem's board members were personally in attendance, including DeWalt Willard.  The Financial Adviser presented the board members with a detailed review of their price calculation of Ag-Chem, including the price per share Ag-Chem should anticipate in the event of a business combination.  In addition, the board was advised of the substance of Ag-Chem's lengthy meetings with the original potential merger partner regarding a possible business combination,

and of more preliminary discussions with other companies, including AGCO. The Board was also advised to refrain from purchasing the original potential merger partner's stock during this period. At the close of the Financial Adviser's presentation the board members were asked to return the preliminary valuation materials.

19.     After the August 21, 2000 board meeting, Ag-Chem continued to meet with potential buyers, including both the original suitor and AGCO.

20.     On September 25, 2000, a meeting was held between executives from AGCO, their attorneys, Ag-Chem, Ag-Chem's attorneys, and DeWalt Willard about possible structures for an acquisition, possible synergies that might result from a combination of AGCO and Ag-Chem, and possible strategies for integrating Ag-Chem's business with AGCO.

21.     On November 20, 2000, Ag-Chem announced that it had agreed to be acquired by AGCO. Under the agreement, Ag-Chem became a wholly owned subsidiary of AGCO and Ag-Chem shareholders received a combined payment of cash and AGCO stock with a total value of $25.80 per Ag-Chem share. The closing share price of Ag-Chem stock was $22.50 on November 20th, an increase of $11.00 from its close on the previous business day.

### Unlawful Trading by DeWalt J. Willard, Jr.

22.     At the time of the transactions and events alleged in this Complaint, DeWalt Willard was a member of Ag-Chem's board of directors, and therefore owed a fiduciary duty to Ag-Chem and its shareholders. As a result, DeWalt Willard had a fiduciary duty not to trade while in possession of material non-public information and to keep material non-public information confidential.

23.     In violation of his fiduciary duty, DeWalt Willard purchased stock, directly and indirectly, while in possession of material nonpublic information about Ag-Chem's proposed value and potential suitors.

24.     DeWalt Willard's office received the confidential preliminary valuation materials from Ag-Chem's Financial Adviser on August 17, 2000 via Federal Express.  The Federal Express *Tracking Detail Report* revealed that the package was delivered to DeWalt Willard's office on August 17, 2000 at 9:49 a.m.  Shortly after his office's receipt of the materials, DeWalt Willard, while in possession of material non-public information about Ag-Chem's merger negotiations, personally telephoned his broker and directed the purchase of 5,000 shares of Ag-Chem stock at $8 per share.  The broker's trade report indicates DeWalt Willard's order was placed at 10:02 a.m.

25.     On or about August 21, 2000, the same day as the Ag-Chem board meeting, DeWalt Willard called a longtime friend to request that the friend purchase Ag-Chem stock on his behalf.  DeWalt Willard told his friend that he would repay his friend for the purchase. DeWalt Willard also informed his friend that it looked like Ag-Chem was going to be purchased. As a result, on August 21, 2000, DeWalt Willard's friend directed the purchase of 1,200 shares of Ag-Chem stock at $8 per share, for DeWalt Willard's benefit.

26.     After learning of DeWalt Willard's August 17, 2000 direct purchase of Ag-Chem stock, Ag-Chem's CEO contacted DeWalt Willard and, commenting that there was a chance that it could be construed to be an improper action by a board member, requested that DeWalt

Willard sell the 5,000 shares.  On October 4, 2000, DeWalt Willard sold the 5,000 shares and returned the net profit from the sale of $729 to Ag-Chem.

27.     Following the September 25, 2003 meeting between Ag-Chem and AGCO representatives that DeWalt Willard attended, and after his conversation with Ag-Chem's CEO and subsequent sale of Ag-Chem stock, DeWalt Willard again telephoned his friend and asked the friend to purchase additional Ag-Chem stock on his behalf.  On October 5 and 6, 2000, DeWalt Willard's friend purchased  4,100 additional Ag-Chem shares, at prices ranging from $8.75 to $8.875 per share, for DeWalt Willard's benefit.

28.     Between August 21, 2000 and October 6, 2000, DeWalt Willard's friend purchased, for DeWalt Willard's benefit, at DeWalt Willard's request and in violation of his fiduciary duty to Ag-Chem and its shareholders, a total of 5,300 shares of Ag-Chem.  As of the close of trading on November 20, 2000, the date that Ag-Chem announced that it had agreed to be acquired by AGCO, DeWalt Willard had earned illegal profits of $73,287 on this Ag-Chem stock.

### DeWalt J. Willard, Jr. Files Incomplete Form 4

29.     As a director of Ag-Chem, DeWalt Willard was required to file a Form 4, Statement of Changes in Beneficial Ownership with the Commission, detailing any changes in ownership of Ag-Chem stock within ten days after the close of the calendar month during which there was a purchase.  On September 8, 2000, DeWalt Willard filed a Form 4 disclosing his August 17, 2000 purchase of 5,000 shares of Ag-Chem stock.  However, DeWalt Willard failed to disclose his purchase of the 1,200 shares of Ag-Chem through his friend on August 21, 2000.

30.     In addition,  DeWalt Willard failed to file a Form 4 to report his purchase of the additional 4,100 shares of Ag-Chem through his friend on October 5 and 6, 2000.

### Unlawful Trading by William F. Willard, Sr.

31.     Sometime in late September 2000, DeWalt Willard told his son, William Willard, that there would be a possible merger or acquisition of Ag-Chem by AGCO.  William Willard felt that the information provided to him by his father, whom he knew was an Ag-Chem director, was sensitive and should remain confidential.  William Willard knew, or was reckless in not knowing, that the information he received from his father was non-public, and had been disclosed to him in breach of his father's fiduciary duty.

32.     On October 6, 2000, William Willard telephoned Martin, and asked him to meet him at a McDonald's parking lot in Myersville, Maryland.

33.     At the McDonald's meeting, William Willard asked Martin to purchase 1,800 shares of Ag-Chem stock on his behalf.  William Willard gave Martin a check for $18,000 to pay for the shares.

34.     Martin, who knew that DeWalt Willard was a director of Ag-Chem, asked William Willard if something was happening with Ag-Chem.  William Willard told Martin that there was a possibility that AGCO might purchase Ag-Chem, but cautioned Martin that the sale was not yet definite.  William Willard requested that Martin keep the information confidential, but told him he could also purchase Ag-Chem stock.  William Willard also told Martin that he did not want to purchase the stock in his personal brokerage account in Frederick, Maryland because he believed the information was sensitive.

9

35.    Martin told William Willard that he would open a separate brokerage account outside of Frederick to purchase the shares on William Willard's behalf.

36.    Shortly after the meeting, Martin deposited William Willard's $18,000 check into his checking account and then proceeded to open a new securities account at a brokerage firm located in Hagerstown, Maryland.  The account was opened in Martin's name for the sole purpose of purchasing William Willard's Ag-Chem stock.

37.    On October 6, 2000, using a check in the amount of $18,145.45, Martin directed his broker at the Hagerstown brokerage firm to purchase 1,800 shares of Ag-Chem stock, which were purchased at prices ranging from $9.75 to $10.125 per share.

38.    On or about November 16, 2000, Martin phoned William Willard at his home. During this conversation, William Willard asked Martin to purchase an additional 1,000 shares of Ag-Chem stock on his behalf.

39.    On November 16, 2000, Martin directed his broker at the Hagerstown brokerage firm to purchase an additional 1,000 shares of Ag-Chem, which were purchased at $11.50 per share.  William Willard provided Martin with a check for $11,629.39 to cover the cost of the purchase.

40.    Between October 6, 2000 and November 16, 2000, at William Willard's request, Martin purchased a total of 2,800 shares of Ag-Chem stock for William Willard.  As of the close of trading on November 20, 2000, William Willard had earned illegal profits of $33,462 on this Ag-Chem stock.

10

## Unlawful Trading by Larry L. Martin

41.     Martin knew, or was reckless in not knowing, that the information that he received from William Willard about a possible acquisition of Ag-Chem by AGCO was non-public and had been disclosed to him in breach of DeWalt Willard's fiduciary duty.   Based on this information Martin, on October 6, 2000, purchased 2,200 shares of Ag-Chem stock at prices ranging from $9.375 to $9.50 per share.  Martin also purchased an additional 1,800 shares of Ag-Chem stock at $9.50 per share.

42.     On November 10 and 13, 2000, Martin purchased an additional 4,000 shares of Ag-Chem stock, at prices ranging from $11.50 to $12.25 per share.

43.     In total, based on the information about a possible acquisition of Ag-Chem by AGCO provided to him by William Willard, Martin purchased a total of 2,200 shares of Ag-Chem stock in his Cash Management Account and 5,800 shares of Ag-Chem stock in his IRA account.  As of the close of trading on November 20, 2000, Martin had earned illegal profits of $93,812 on this Ag-Chem stock.

44.     In addition to purchasing Ag-Chem stock for his own account, Martin also opened two accounts - one in the name of each of  his two sons - and purchased Ag-Chem stock based on the information provided to him by William Willard about a possible acquisition of Ag-Chem by AGCO.

45.     On October 20, 2000, Martin opened an account in the name of one of his sons at the Hagerstown brokerage firm.  On October 25, 2000, Martin directed the purchase of 500 shares of Ag-Chem stock at $11.375 per share in the account.  On October 30, 2000, Martin

directed an additional purchase of 300 shares of Ag-Chem stock at $11.375 per share for the son's account. As of the close of trading on November 20, 2000, Martin had earned illegal profits of $8,900 on this Ag-Chem stock.

46.    On November 1, 2000, Martin opened an account for the second son at the Hagerstown brokerage firm. On November 7, 2000, Martin directed the purchase of 300 shares of Ag-Chem stock at $11 per share and, on November 10, 2000, an additional 300 shares at $11.75 per share. As of the close of trading on November 20, 2000, Martin had earned illegal profits of $6,675 on this stock.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

#### (against all defendants)

47.    The Commission realleges and incorporates by reference every allegation contained in Paragraphs 1 through 46 above.

48.    From August 17, 2000 through November 16, 2000, the Defendants DeWalt Willard, William Willard and Martin, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange: (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which

they were made, not misleading; and (iii) engaged in acts, practices, and courses of business which operated as a fraud and deceit upon other persons.

49.     As part of and in furtherance of this violative conduct, DeWalt Willard, in breach of his fiduciary duty to Ag-Chem and its shareholders, purchased Ag-Chem stock while in possession of material, nonpublic information concerning Ag-Chem's merger negotiations.

50.     As part of and in furtherance of this violative conduct, DeWalt Willard, for his direct and indirect benefit, in breach of his fiduciary duty, knowingly or recklessly communicated material, nonpublic information about Ag-Chem's merger negotiations to his son, William Willard.

51.     As part of and in furtherance of this violative conduct, William Willard purchased Ag-Chem stock while in possession of the material, nonpublic information about Ag-Chem's merger negotiations.  At the time of his purchases, William Willard knew or was reckless in not knowing that this material, nonpublic information had been communicated to him in breach of a fiduciary duty.

52.     As part of and in furtherance of this violative conduct, William Willard, for his direct and indirect benefit, knowingly or recklessly communicated material, nonpublic information about Ag-Chem's merger negotiations to Martin.

53.     As part of and in furtherance of this violative conduct, Martin purchased Ag-Chem stock while in possession of the material, nonpublic information about the Ag-Chem merger negotiations.  At the time of his purchase, Martin knew, or was reckless in not knowing,

that this material, nonpublic information had been provided to William Willard by DeWalt

Willard, in breach of DeWalt Willard's fiduciary duty to Ag-Chem.

54.     By reason of the foregoing, the Defendants violated, and unless enjoined, will

continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17

C.F.R. § 240.10b-5 thereunder.


### SECOND CLAIM

**Violation of Section 16(a) of the Exchange Act
and Rule 16a-3 thereunder**

**(against DeWalt J. Willard, Jr.)**

55.     The Commission realleges and incorporates by reference every allegation

contained in Paragraphs 1 through 54 above.

56.      DeWalt Willard, a director of Ag-Chem, was required to file reports of

ownership and changes of ownership with the Commission pursuant to Section 16(a) of the

Exchange Act and Rule 16a-3 thereunder.

57.     DeWalt Willard  failed to report his purchases of Ag-Chem stock in August 2000

and October 2000.  Accordingly, DeWalt Willard violated Section 16(a) and Rule 16a-3

thereunder.

58.     By reason of the foregoing, defendant, DeWalt Willard, violated Section 16(a) of

the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3, 17 C.F.R. § 240.16a-3, thereunder.

**WHEREFORE**, the Commission respectfully requests that this Court:

## I.

Issue an injunction permanently enjoining defendants DeWalt Willard, William Willard, and Martin from violating Section 10(b) of the Exchange Act and Rule 10b-5, thereunder, and enjoining DeWalt Willard from violating Section 16(a) of the Exchange Act and Rule 16a-3, thereunder.

## II.

Order defendants DeWalt Willard, William Willard and Martin to disgorge the unlawful profits resulting from their actions, as described in this Complaint, together with prejudgment interest thereon.

## III.

Order defendants DeWalt Willard, William Willard and Martin to pay civil penalties pursuant to Section 21A of the Exchange Act, 15 U.S.C. 78u-1, of up to three times the amount disgorged.

## IV.

Order defendant DeWalt Willard to be barred from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. 78o(d), pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. 78u(d)(2).

**V.**

Order such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

_____

Merri Jo Gillette, PA Bar No.37075
Christina Rainville, PA Bar No. 54571
Barry Isenman, PA Bar No. 40956

Attorneys for Plaintiffs:

**SECURITIES AND EXCHANGE COMMISSION**
Mellon Independence Center, Suite 2000
701 Market Street
Philadelphia, PA 19106
(215) 597-3100

<u>Local Counsel</u>:
Thomas M. DiBiagio
United States Attorney

By:_____

Thomas F. Corcoran
Assistant United States Attorney
Federal Bar No. 24894
6625 United States Courthouse
101 West Lombard Street
Baltimore, MD 21201-2692
(410) 209-4800

Dated: September 29, 2003